## WILLIAM C. HOUSER *v.* ANDREW SINGISER *et al. Admrs.*

An unexecuted gift is revocable.

Where one makes a conditional gift and delivers the thing into indifferent hands to keep for the use of a stranger, still, before the condition is performed, the bailment is revocable.

This case was tried without regard to form, as it is questionable whether plaintiff could sue in his own name. After hearing the case, the court directed a verdict for plaintiff for $625.00, but reserved the question as to whether the release of the plaintiff's father had not totally defeated the cause of action and rule *non obstante veredicto.*

Opinion of court by

JUNKIN, P. J. The facts are, that on the 28th March, 1855, John Houser and Elizabeth, his wife, conveyed the husband's real estate to George Singiser, the defendants' intestate, and in the conveyance is the following provision: "It is also agreed by the said parties, that the sum of $2,500 of the purchase money shall remain in the property hereby conveyed, during the natural life of the said John Houser and Elizabeth, his wife; and that the said Singiser is to pay six per cent. interest for the same annually, that is, on the first day of April each year, retaining the right to the said John Houser and Elizabeth, his wife, to enter upon the premises to destrain for the same, as often as it may become due and unpaid. And at their death the principal sum of $2,500 to be paid to the heirs at law." Elizabeth died before her husband, and Houser married again a wife, who survived him and still lives. Then, on the 14th April, 1863, John Houser himself received from Andrew Singiser, who had become the owner of the land charged with the $2,500, this sum, and he released in writing the lien or charge created by the deed of Houser to George Singiser, of the 28th March, 1855, and indemnified Andrew against any recovery by his, Houser's heirs. The plaintiff, as one of the four children of John Houser, seeks by this action to recover the one-fourth of this $2,500. We instructed the jury to find for the plaintiff, reserving, however, the effect of the release of 14 April, 1863.

It may well be argued that the provisions of the deed by Houser to Singiser of March 28, 1855, amounted to anything more than an agreement with the purchaser that during the life of the grantor and wife, and

the survivor, the said $2,500 should remain in the land, they receiving the interest only, and, upon the death of the survivor, the principal to be paid to the vendor's estate, the word heirs having no more meaning than attaches to the term when used in a bond or other money obligation. The fund is money, not land; no part of the latter, or the title thereto, is reserved. But concede that it amounts to a gift of the $2,500 to the heirs of Houser, and what of it? At the utmost it was but a bailment of the sum to George Singiser to be delivered to the heirs of the bailor upon his decease. There are implied conditions, to-wit: That the donor die leaving heirs, and that they shall accept the gift. If either fails, the gift reverts to the donor. The evidence discloses no duty on the part of the donor or bailor to make the gift, and nothing can be clearer upon authority than that an unexecuted gift, made upon one's mere good-will and pleasure, may be revoked; and we cannot refrain citing at large the case of Lutz *et ux. v.* Perry, 1 Dyer's Reports, 48–49, a case argued by the judges themselves in that quaint but forcible style characteristic of the age. " The case was : A man bailed a sum of money to another to the *use and behoof of a woman,* and to deliver it to her on the day of her marriage ; and before the marriage the bailor countermands and revokes the said money. And whether he can do this is the matter in law ; and Jenney and Willouby (judges) argued it *(sed non ad sui),* and they thought that he could not countermand it, etc. But Baldwin and Shelley (also judges) *contra,* and Shelley said that in every gift for the common ground there should be three things—a donor, a donee and thing to be given ; and, if any one fail, the gift is imperfect. And he would add to this the saying of Bracton, *de acquirendo rerum dominio,* Lib. 2 C. 5, fol. 11 b., that gifts, though commenced, are of no force if they be not completed. And in this case the gift was not completed for two reasons : One, because it may happen that the woman, who is the third person, may disagree to the gift, and then the gift is imperfect, for she is not compelled to take against her will. Also, in case the woman die before her marriage, or enter into religion and become professed, or choose never to marry, then again she can never have the money. And this Baldwin afterwards allowed. For when a man makes such sort of conditional gift of his mere will and good pleasure, and delivers the thing into indifferent hands to keep for the use of a stranger, still, before the condition is performed, the bailment is revocable. For if a man delivers to his servant on new year's day a golden cup to give as a new year's gift to a stranger, clearly he may countermand this, notwithstanding the gift, for this was not a gift perfectly executed. And there is a difference when a man makes a gift or bailment to give to a stranger upon a consideration or former duty. As if I say that J. S. has enfeoffed me out of certain lands, and in recompense thereof I give him this money and bail it to a stranger to give it over, I cannot countermand because the gift does not take

effect as a pure gift, but as a satisfaction. And the law is the same when a thing is delivered in consideration, satisfaction or recompense of any other thing : there he cannot countermand. And as to here, if the case had been that the bailor had been to be bound by covenant, in consideration of a marriage precedent to pay such a sum, then could he never revoke it, for this alters the property immediately ; but it is otherwise of a mere gift without any cause precedent. And he said besides that, in the eighteenth year of the now king, a man made a feoffment to perform his last will, and his will was annexed to the charter of feoffment, and livery of *seisin* thereupon made accordingly ; and it was adjudged that he may alter and revoke this will, although it took effect upon the livery, etc. Baldwin to the same purpose, for there was no gift executed, but only executory, and therefore he may revoke it ; as if a man make a letter of attorney to make livery of *seisin* he may revoke it at his pleasure." This principle seems to cover the case at hand. Does it matter that the agreement to give is part of a sealed instrument, the deed of the donor ? In Butler & Baker's case, 3 Coke 26, this is said : " But if A. make an obligation to B. and deliver it to C. to the use of B. this is the deed of A. presently ; but C. offers it to B., there B. may refuse it *in pais*, and thereby the obligation will lose its force and therewith agrees Hill 1 Eliz., Rot. 442, in Tawe's case. The same law of a gift of goods and chattels ; if the deed be delivered to the use of donee the goods and chattels are in the donee presently until the donee make refusal *in pais*, and by that the property will be divested, and such disagreement need not be in a court of record." To this, however, Coke remarks : " *Note, reader.*—By this resolution you will not be drawn to error by certain opinions delivered, by the way, without premeditation." The only difference the written deed seems to make is this, it was a contract between the vendor and the vendee, and fixed the time of payment of the $2,500 at the vendor's death ; or, if his wife Elizabeth survived him, then, at her death, and the assent of the vendee became necessary to immediate payment ; and when this was obtained, as it was, unless the gift was irrevocable, all difficulty vanishes.

Again, the gift is "to the heirs at law." During his life he had none, and "heirs" is a word of limitation. Auman *v.* Auman, 9 Harris 343. In Morris *v.* Stephens, 10 Wright 200, a conveyance by grantor "to the heirs of his son Andrew," was held void for uncertainty, and parol evidence to show who were meant by the term "heirs," was held to be inadmissible.

Finally, Harvey's appeal, 11 Casey 207, cannot be distinguished from the case before us. There, Marshall Harvey, on 8 August, 1857, executed a deed of trust, conveying his estate, real and personal, to C. Harvey, his heirs and assigns, " for use of all his creditors, to pay all his debts and the expenses, and to secure one-third part of the surplus, and to pay the inter-

est of the same annually to Edith T. Harvey, his wife, during her life ; and to pay the interest on the remaining two-thirds to Marshall Harvey himself during his life ; and if the said Edith T. Harvey should survive him, at his decease to pay the said two-thirds *to his heirs*, or to whomsoever he should bequeath it ; if his wife should not survive him, the "whole surplus remains in trust, the interest of the whole to be paid to him annually ; and at his decease the principal sum to whomsoever he may bequeath it, and in default of such bequest, then it is to be paid to his heirs in equal shares." On 27 November, 1858, Marshall Harvey revoked the trust, except so far as related to the payment of his debts, and the provision for his wife. On settlement of account by trustee, the surplus, after paying debts, was disposed of. One-third retained by trustee during the life of the wife, she receiving the interest thereof, and the remaining two-thirds were ordered to be paid to Harvey himself.

Looking, then, at the whole case, we are of the opinion that John Houser, the grantor in the deed of 28th March, 1855, could and did by his release of the 14th April, 1863, to Andrew Singiser, the then owner of the land, revoke the said gift, if a gift, and that the plaintiff cannot recover.